******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KRISTIN WILKINS ET AL. *v.* CONNECTICUT
CHILDBIRTH AND WOMEN'S
CENTER ET AL.
(AC 38224)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff sought, in two actions that were consolidated for trial, to
recover damages from the defendant W Co. for medical malpractice,
claiming that W Co. and its agents were negligent in their care and
treatment of the plaintiff immediately after the delivery of her daughter
and in her postdelivery care with regard to her pregnancy. Specifically,
the plaintiff alleged, inter alia, that W Co. had failed to diagnose and to
treat a fourth degree obstetrical laceration at the time of the delivery.
The matter was tried to a jury, which returned a verdict in favor of W
Co. From the judgments rendered thereon, the plaintiff appealed to this
court. She claimed, inter alia, that the trial court abused its discretion
in submitting a threshold interrogatory to the jury and in framing its
answer to a question from the jury. Specifically, the first jury interroga-
tory asked the jury to determine whether the plaintiff had in fact sus-
tained a fourth degree laceration and/or a severe tear of her vaginal
tissue, her perineal skin and muscle, and anal sphincter muscle during
labor and delivery, and it stated that if the answer was no, the jury was
to return a verdict for W Co. During deliberations, the jury asked the
court whether it was sufficient if it found that there was an injury to
just one of those areas or whether it had to find an injury to all three
of those areas. The court answered that in light of the use of the word
"and" in the interrogatory, the injury should be evaluated as a whole
and not as separate injuries. *Held* that the trial court did not abuse its
discretion in giving the jury the first interrogatory or in framing its
answer to the jury's question: that court's use of the first interrogatory
and its answer to the jury that the injury should be evaluated as a
whole were consistent with the language of the plaintiff's complaint,
the evidence adduced at trial and the plaintiff's arguments, and were
permissible in order to elicit a determination of the material threshold
fact, namely, whether the plaintiff had sustained a fourth degree lacera-
tion and/or severe tear to her vaginal tissue, perineal skin and muscle,
and anal sphincter muscle at the time of giving birth, as alleged in the
complaint, as the existence of such an injury was central to all of the
claims alleged in the complaint, and the expert testimony presented
focused on the existence of such an injury and did not relate that the
plaintiff sustained anything less than a fourth degree laceration during
labor; moreover, because the crux of the plaintiff's claim at trial was
that she sustained such an injury and the success of her presentation
at trial depended on the factual determination of whether she did indeed
suffer the claimed injury, it was within the court's discretion to submit
the interrogatory to the jury asking it to determine first whether it found
that the plaintiff sustained such an injury, and the plaintiff could not
claim that the court erred in framing the language utilized by the plaintiff
herself as the core of her complaint.

Argued April 19—officially released September 19, 2017

*Procedural History*

Action, in two cases, to recover damages for personal
injuries sustained by the named plaintiff as a result of
the defendants' alleged medical malpractice, and for
other relief, brought to the Superior Court in the judicial
district of Danbury, where the plaintiff Billy Wilkins
withdrew his claim for loss of consortium; thereafter,
the actions were withdrawn as to the named defendant,
and the cases were consolidated and tried to a jury

before *Truglia, J.*; verdict for the defendant Women's Health Associates, P.C., in both cases; subsequently, the court denied the named plaintiff's corrected motion to set aside the verdict and rendered judgments in accordance with the verdict, from which the named plaintiff appealed to this court. *Affirmed.*

*Alinor C. Sterling*, with whom were *Sarah Steinfeld* and, on the brief, *Carey B. Reilly*, for the appellant (named plaintiff).

*David J. Robertson*, with whom were *Christopher H. Blau* and, on the brief, *Madonna A. Sacco* and *Matthew M. Sconziano*, for the appellee (defendant Women's Health Associates, P.C.).

*Opinion*

BISHOP, J. In this medical negligence action, the plaintiff Kristin Wilkins[1] appeals from judgments in two cases, which were consolidated for trial, in favor of the defendant Women's Health Associates, P.C.[2] On appeal, she argues that the court abused its discretion in submitting a threshold jury interrogatory and in framing its answer to a question from the jury regarding that interrogatory, and, therefore, the jury verdict, returned in the defendant's favor, should be set aside and a new trial should be ordered. We disagree and, accordingly, we affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The defendant is a birthing center located in Danbury, which employs physicians and certified nurse-midwives, in addition to other medical professionals and support staff. The plaintiff gave birth to her second child on April 17, 2007, at the defendant birthing center, where she was attended to by staff, including Katy Maker, a certified nurse-midwife. Immediately following the birth, Maker visually and physically examined the plaintiff's vaginal and perineal areas[3] to determine whether there had been any obstetrical lacerations during birth.[4] Maker documented in the plaintiff's medical chart that the plaintiff had not sustained any obstetrical lacerations and that her perineum was intact.[5] The following day, April 18, 2007, at the plaintiff's home, Maker again visually and physically examined the plaintiff's vaginal and perineal areas to ensure that she was healing properly from birth. Maker did not document that the plaintiff had a laceration or any abnormalities. The plaintiff also returned to the defendant center on April 25, 2007 for a one week postpartum visit, performed by another certified nurse-midwife, Catherine Parisi. Parisi noted on the medical form during that visit that there were no problems with the plaintiff's perineum. The plaintiff next returned to the defendant center on May 31, 2007, for a six week follow-up examination, performed by Maker. Maker visually and physically examined the plaintiff's vaginal and perineal areas, and documented in the plaintiff's medical chart that she had "healed well" from the birth, and recorded no lacerations or abnormalities.

On August 1 or 2, 2007, the plaintiff returned to the defendant center again for an annual examination, at which time no lacerations or abnormalities were recorded. On September 4, 2007, the plaintiff was examined by a dermatologist, unaffiliated with the defendant, who documented that the plaintiff's genitalia were normal.

On March 6, 2008, the plaintiff returned to the defendant center for an annual gynecological examination, performed by Parisi. Parisi noted on the medical chart under "Reason for Visit" that it was an annual examina-

tion, and also, on the basis of how the plaintiff described her condition, that the plaintiff was "concerned about healing of laceration from birth last year, some rectal incontinence, [and] 'loose' tissue in vagina." Parisi examined the plaintiff's perineal area and noted on the medical form that her external genitalia "showed abnormalities [and a] poorly healed laceration," though Parisi testified that she did not know whether a laceration had occurred at birth. Parisi referred the plaintiff to Kenneth Blau, a gynecologist specializing in pelvic reconstructive surgery and urogynecology,[6] who was the founder, managing partner, and president of the defendant. Blau examined the plaintiff on April 26, 2008, and recorded that the plaintiff's perineum was "totally absent," that she had "no sphincter, thin membrane between anus and vagina," and that she required "complete perineal/anal reconstruction . . . ." He opined that the cause of such an injury was a "failed episiotomy restitution," though he testified that he was not sure whether the plaintiff had an episiotomy when she gave birth, and was relying on the plaintiff's own recollection.[7]

The plaintiff later began treatment with another urogynecologist, Richard Bercik, who is unaffiliated with the defendant. On July 31, 2008, Bercik performed an abdominal examination, a pelvic examination, and a rectal examination of the plaintiff. He determined that the plaintiff's "external genitalia were gaping or essentially . . . wide open," that her "sphincter muscles, both the internal and external sphincters, were torn," that "she had a complete separation of [the] wall between the vagina and the rectum," that "[t]he muscles that would make up the perineal body . . . were no longer there . . . and there was, actually, an absent perineum, so there was no separation between the vagina and the rectum," and "[e]ssentially the lining of the rectum, the mucosa of the rectum and the mucosa of the vagina were . . . basically next to each other with no tissue in between . . . ." Bercik testified that the plaintiff was suffering from a "cloaca, which is a term for a combined vagina and anus." He diagnosed the plaintiff with a fourth degree obstetrical laceration, which he opined dated back to the time of delivery, and was either unrepaired, or was repaired, but the repair had subsequently broken down.

A fourth degree laceration extends "from the vagina all the way through into the rectal mucosa," which is "the most internal part of the . . . anal sphincter."[8] Bercik surgically repaired the fourth degree laceration on September 8, 2008.

The plaintiff filed a complaint in this medical negligence action on February 19, 2010, alleging that the defendant and its agents were negligent in their care and treatment of the plaintiff immediately after the delivery of her daughter, on April 17, 2007, and in her

postpartum examination on April 18, 2007. In her operative one count amended complaint, dated January 16, 2015, the plaintiff asserted that the defendant was negligent in the following ways: (1) "failed to adequately and properly care for, treat, diagnose, monitor and supervise the plaintiff . . . for delivery and postdelivery care with regard to her pregnancy"; (2) "failed to inspect properly the vaginal, perineal and anal areas of the plaintiff . . . immediately following the vaginal delivery on April 17, 2007 and/or on April 18, 2007"; (3) "failed to diagnose a [fourth] degree and/or severe tear of the vaginal tissue, perineal skin/muscle and anal sphincter immediately following the vaginal delivery"; (4) "failed to inform the plaintiff that she had a [fourth] degree and/or severe tear of her vaginal tissue, perineal skin/muscle and anal sphincter immediately following the vaginal delivery"; (5) "failed to treat properly and in a timely manner the plaintiff's [fourth] degree and/or severe tear of her vaginal tissue, perineal skin/muscle and anal sphincter immediately following the vaginal delivery"; and (6) "failed to refer properly and in a timely manner the plaintiff for treatment of the [fourth] degree tear and/or severe tear of her vaginal tissue, perineal skin/muscle and anal sphincter immediately following the vaginal delivery . . . ." The plaintiff alleged many physical injuries, including an unrepaired fourth degree obstetrical laceration, fecal incontinence, surgery, "tear of the vaginal tissue, perineal skin, perineal muscle, anal sphincter and/or rectal tissue," and absent perineum.[9]

The jury trial took place over the course of nineteen days, at which the plaintiff called to testify, inter alia, the plaintiff, Bercik, and Blau, and entered into evidence the video depositions of many of the defendant's nurse-midwives, including Maker and Parisi. The plaintiff's theory of the case, that the defendant failed to diagnose and treat a fourth degree laceration at the time of the delivery, vastly differed from the defendant's theory, that the plaintiff did not suffer a fourth degree obstetrical laceration during delivery.[10] The defendant moved for a directed verdict on January 20, 2015, alleging, inter alia, that the plaintiff failed to establish that the defendant was negligent in its care of the plaintiff. The court, *Truglia*, *J.*, denied the defendant's motion.

At the end of the evidence portion of the trial, on February 24, 2015, the court held a charge conference to discuss a draft of the proposed jury charge and jury interrogatories. The first jury interrogatory suggested by the court purported to ask the jury to determine whether the plaintiff had in fact sustained a fourth degree laceration during labor and delivery on April 17, 2007. The plaintiff objected to the interrogatory as creating a prejudicial threshold issue. The plaintiff also argued that not all of the allegations in the complaint specified that there was a fourth degree laceration, and, therefore, the jury did not necessarily have to find that

there was such an injury in order to return a verdict in the plaintiff's favor. In the event that the interrogatory was given to the jury, however, the plaintiff requested that the court add the clause "and/or severe tear of her vaginal tissue, her perineal skin and muscle and anal sphincter muscle" after "fourth degree laceration" in order to conform to the language used in the complaint.

The defendant, however, agreed with the court's use of this first interrogatory stating: "[I]t is the definitive question that was asked of all the experts. If there was no fourth degree laceration . . . or no perineal skin muscle and anal sphincter [tear] during labor and delivery on April [17, 2007] . . . [then] the whole case is gone." The defendant further stated that there was no claim in the case that the plaintiff had anything other than a fourth degree laceration, and there was "no testimony about [a first] or a second or a third" degree laceration, and that "everything . . . fails if there was no fourth degree laceration," to which the court responded, "[t]hat's how I see it."

On February 25, 2015, after instructing the jury, the court submitted its proposed first interrogatory with the additional language requested by the plaintiff. The interrogatory stated as follows: "1. Do you find that the plaintiff has proven by a preponderance of the evidence that she sustained a fourth degree laceration and/or a severe tear of her vaginal tissue, her perineal skin and muscle and anal sphincter muscle during her labor and delivery on April 17, 2007?" The interrogatory further instructed: "*If your answer to this question is yes, please proceed to the next questions. If your answer is no, please proceed directly to the verdict form for defendant Women's Health Associates, P.C., and enter a verdict for the defendant.*" (Emphasis in original.)

On the following day, during deliberations, the jury asked the court the following question: "Is the injury stated after and/or evaluated as a whole or should they be evaluated separately?" After some discussion as to how to interpret the question, the court, the plaintiff's counsel, and the defendant's counsel agreed on an understanding—that "the jury wants to know if they find that there was an injury to just the vaginal tissue, just the perineal skin or just the . . . anal sphincter muscle, [whether] that's sufficient or whether they have to find an injury to all three of those areas . . . ." The defendant argued that the clause, "a severe tear of her vaginal tissue, her perineal skin and muscle and anal sphincter muscle," should be evaluated as a whole because of the use of word "and," whereas the plaintiff argued that the jury could evaluate it as a whole, or as separate injuries. In determining the answer to the question, the court stated to the plaintiff: "[Y]our complaint speaks of [the] failure to diagnose a fourth degree and/or severe tear of the vaginal tissue, perineal skin/muscle and anal sphincter. Those things are the same

in the court's view. Fourth degree and/or severe tear mean the same thing."

Accordingly, the court instructed the jury as follows: "The answer to your question is: the injury stated after and/or, in interrogatory number one, should be evaluated as a whole, that's the answer to this question and that's all I can say, at this time." Thereafter, the jury answered "no" to the first interrogatory and, accordingly, returned a verdict in favor of the defendant on February 26, 2015.

The plaintiff filed a motion to set aside the verdict on March 4, 2015, alleging, inter alia, that the court improperly submitted the first jury interrogatory. The court denied the motion on July 28, 2015, stating that the interrogatory and subsequent instruction were "entirely consistent with the plaintiff's allegations of negligence and offer of proof at trial." Accordingly, the court rendered judgment in favor of the defendant on July 28, 2015. This appeal followed.

On appeal, the plaintiff argues that the court abused its discretion in giving the jury an unnecessary threshold interrogatory, and, therefore, the jury verdict should be set aside and a new trial should be ordered. Specifically, the plaintiff argues that the interrogatory was unnecessary and confusing, that the complaint made claims other than those allowed by the interrogatory, that the evidence supported claims based on injuries other than those posed in the interrogatory, and that the court's instruction following the jury's question "cemented the error." In each of her arguments, the plaintiff is essentially making the same claim: that the jury could have returned a verdict for the plaintiff even if it did not find that the plaintiff had sustained a fourth degree laceration and/or severe tear of her vaginal tissue, perineal skin/muscle, and anal sphincter muscle during labor. In response, the defendant argues that the court acted well within its discretion in giving the jury the first interrogatory because it "accurately captured and reflected" the plaintiff's claims at trial. We agree with the defendant.

We first set forth our standard of review. "The power of the trial court to submit proper interrogatories to the jury, to be answered when returning [its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks

omitted.) *Champeau* v. *Blitzer*, 157 Conn. App. 201, 210, 115 A.3d 1126, cert. denied, 317 Conn. 909, 115 A.3d 1105 (2015).[11]

We further note that jury interrogatories must be consistent with the pleadings and the evidence adduced at trial, so as not to mislead the jury. *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 316, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995). "The function of jury interrogatories is to provide a guide for the jury's reasoning, and a written chronicle of that reasoning." *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 710, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). The purpose of jury interrogatories is to elicit a determination of material facts, to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent. *Viera* v. *Cohen*, 283 Conn. 412, 451, 927 A.2d 843 (2007). In the present case, the court's use of the first interrogatory was consistent with the pleadings and the evidence, and was permissible in order to elicit a determination of the material, threshold fact: whether the plaintiff sustained a fourth degree laceration and/or severe tear to her vaginal tissue, perineal skin and muscle, and anal sphincter at the time of giving birth.

The plaintiff's argument that the interrogatory was improper because the complaint made claims other than those allowed by the interrogatory must fail because the tenor of the complaint, as highlighted by the testimony elicited at trial, relied on the plaintiff suffering from a fourth degree laceration and/or severe tear at the time of birth. Additionally, the plaintiff's argument that the interrogatory was improper because the jury could have found something less than a fourth degree laceration is inconsistent with the testimony elicited at trial. So, too, is her argument that the interrogatory was improper because the complaint and evidence supported a jury's finding for the plaintiff even if there was no fourth degree laceration and/or severe tear. Finally, the plaintiff's argument that the court's supplemental instruction to the interrogatory "cemented the [court's] error" must also fail for the same reasons.

In her one count negligence complaint, the plaintiff alleged six subclaims, four of which specifically linked the defendant's negligence to the existence of a fourth degree laceration and/or "severe tear of the vaginal tissue, perineal skin/muscle, and anal sphincter" on April 17 or 18, 2007. The two allegations that did not specifically mention the claimed injury were that the defendant "failed to adequately and properly care for, treat, diagnose, monitor and supervise the plaintiff . . . for delivery and postdelivery care with regard to her pregnancy, " and "failed to inspect properly the vaginal, perineal and anal areas of the plaintiff . . . immedi-

ately following the vaginal delivery on April 17, 2007 and/or on April 18, 2007." It is clear from the evidence the plaintiff elicited at trial that, although the complaint itself did not reiterate the claim of a fourth degree laceration in these two subclaims, the existence of such an injury was central to all of her claims.

The plaintiff presented expert testimony from Elizabeth Howard, a nurse-midwife with a doctorate in nursing, who testified regarding the standard of care, that the plaintiff sustained a *fourth degree* laceration during birth. She further testified that without a proper examination, a fourth degree laceration could have been missed, and that, in fact, Maker did fail to accurately diagnose a "significant obstetrical laceration" because of an improper examination. In addition to Howard, the plaintiff presented testimony from one other expert witness, Bercik, regarding causation. Both Bercik and Howard testified that they believed the plaintiff sustained a *fourth degree* laceration during childbirth. The plaintiff, contrary to her assertions in her brief, elicited no expert testimony that the plaintiff sustained anything less than a fourth degree laceration during labor. Further, Bercik testified on direct examination that a fourth degree laceration does not "generally progress from a first to a second, or [from] a second to a third," and further testified on cross-examination that "[w]ithin a degree of medical probability," a small tear would not turn into a fourth degree laceration. Blau also testified on direct examination in the plaintiff's case-in-chief as well as on cross-examination that a first degree laceration, sustained during childbirth, would not evolve into a fourth degree laceration.[12] Additionally, the plaintiff's counsel, herself, relied on the expert testimony that the plaintiff sustained a fourth degree laceration in opposing the defendant's motion for a directed verdict. Counsel argued that the testimony of both Bercik and Howard supported the claim that the plaintiff sustained a fourth degree laceration at the time of birth, and, therefore, a directed verdict was improper.[13]

The crux of the plaintiff's claim at trial was that she had sustained a fourth degree laceration and/or severe tear of the vaginal tissue, perineal skin/muscle and anal sphincter during childbirth on April 17, 2007, and the success of her presentation at trial rose and fell on the factual determination as to whether she did indeed suffer such an injury. For the plaintiff to now claim, on appeal, that the dispute at trial implicated a question regarding the extent of the plaintiff's injuries, and not whether the plaintiff had, in fact, sustained the claimed injuries at childbirth is at odds with the factual record. It was clear throughout the plaintiff's case-in-chief that she was alleging that she sustained a fourth degree obstetrical laceration during childbirth. Indeed, during opening arguments, the plaintiff's counsel stated: "[T]he evidence in this case and the primary dispute in this case is that [the plaintiff] suffered a fourth degree obstetrical

laceration." It is clear further from the plaintiff's opposition to the defendant's motion for a directed verdict that the plaintiff realized that the factual dispute in question was at the heart of this case. Counsel stated: "[T]here's a fact in dispute here. . . . [T]hat's what the jury's here for, to . . . resolve the facts in dispute. . . . I mean, *this case is about a factual dispute, it's less about standard of care and deviation from the standard of care, than it is about the facts*. . . . [I]t is ultimately going to be for the jury to decide, based on the state of the evidence, what they believe the facts to have been." (Emphasis added.) Further, the following colloquy occurred during argument on the defendant's motion for a directed verdict:

"[The Plaintiff's Counsel]: [I]t is for the jury to decide whether or not the totality of that evidence supports the fact that there was a laceration existing at the time, so—

"The Court: A fourth degree laceration, existing at the time. . . .

"[The Plaintiff's Counsel]: A fourth degree laceration, although it—it's also the complaint had—as stated says—right, not a first degree, right, a severe . . . injury to the perineal skin, yes.

"The Court: No, your allegation is that it was a fourth degree.

"[The Plaintiff's Counsel]: And/or, it says; and/or severe—

"The Court: And/or a severe tear of the vaginal tissue.

"[The Plaintiff's Counsel]: Right. Exactly. So, and that's been the allegation all along." Indeed, at the plaintiff's request, the court amended the language of the interrogatory and jury instructions to specifically include a "severe tear" as an alternative injury for the jury to determine, as described by the plaintiff herself in her complaint. Furthermore, the plaintiff alleged in her complaint that she sustained an "unrepaired fourth degree obstetrical laceration."

Finally, the plaintiff's argument that the court's supplemental instruction to the jury on the interrogatory "cemented the [court's] error" must also fail for all of the reasons stated above. The plaintiff continues to argue in this claim that the interrogatory was unnecessary and precluded the jury from finding in her favor, even though it found that the plaintiff had not sustained a fourth degree laceration and/or severe tear during labor. Again, this argument is inconsistent with the plaintiff's contentions throughout trial, as well as the testimony and evidence elicited by the plaintiff. In its question to the court regarding the first interrogatory, the jury asked whether "the injury stated after and/or [should be] evaluated as a whole or should they be evaluated separately," to which the court responded: "The injury stated after and/or . . . should be evalu-

ated as a whole . . . ."[14] The plaintiff's counsel even argued to the court that the plaintiff's "allegation all along" has been that the plaintiff suffered a fourth degree laceration and/or severe tear of her vaginal tissue, perineal skin/muscle and anal sphincter. Also, the language of the interrogatory was taken from the plaintiff's complaint, specifically at the plaintiff's request. The plaintiff may not now claim that the court erred in framing the language that the plaintiff herself utilized as the core of her complaint against the defendant.

Because it is clear from the plaintiff's complaint, the evidence elicited at trial, and the plaintiff's arguments that the case revolved around the existence of a fourth degree laceration and/or a severe tear of the vaginal tissue, perineal skin and muscle, and anal sphincter, it was within the court's discretion to submit this interrogatory to the jury, asking it to determine first whether it found that the plaintiff sustained such an injury. Accordingly, in propounding this threshold interrogatory and the following instruction, the court did not abuse its discretion.[15]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Kristin Wilkins' husband, Billy Wilkins, also was a plaintiff, but he withdrew his claims for loss of consortium prior to the verdict. Therefore, we refer in this opinion to Kristin Wilkins as the plaintiff.

[2] The plaintiff's claims against the named defendant, Connecticut Childbirth & Women's Center, were withdrawn prior to the verdict. All subsequent references to the defendant are to Women's Health Associates, P.C.

[3] The perineum is the "area between the vagina and . . . [the] rectum or anus and [is] really made up of mostly muscles."

[4] An obstetrical laceration is one in which the vaginal, perineal, and/or anal structures "tear during the course of delivery."

[5] The plaintiff testified at trial that Maker told her that there was "a small first degree tear" that looked like it would "heal on its own," so she would not stitch it. Maker testified, however, that she never told the plaintiff that there was any laceration that occurred at birth.

[6] Urogynecology is a subspecialty of gynecology "that deals with vaginal fl[ow] dysfunction and abnormalities."

[7] An episiotomy is the intentional cutting of the vaginal tissue during birth to prevent an obstetrical laceration from occurring. The testimony and evidence reflects that the plaintiff did not require an episiotomy during labor.

[8] At trial, Bercik testified to the other degrees of lacerations as follows: "[A] first degree laceration is when that tear only includes the lining of the vagina or the . . . vaginal epithelia. . . .

"The second degree laceration is one in which that laceration or tear . . . extends into the perineum, but not to the muscles of the anal sphincter. . . .

"Then there's something we call a third degree laceration, which is actually broken down into A, B, and C. So, a third degree laceration, in general, refers to that—that tear now extends into the anal sphincter, but not to the rectal epithelium or mucosa.

"So, [a third degree] A) laceration . . . extends into the external anal sphincter, but not through the entire thickness . . . [and it is] what we call a partial tear of this external anal sphincter.

"Three B) is a complete tear of the [external] anal sphincter, but not the internal sphincter.

"And, then three C) is one which encompasses both [the] internal and external anal sphincter, but not yet to the rectal mucosa."

Blau testified that "[a] fourth degree . . . laceration is really a fairly catastrophic event at a delivery. . . . [T]his is a large gaping defect in the perineum and it extends all the way from the vagina down to the . . . rectal canal . . . the symptoms are incontinence and pain and bleeding, difficulty with intercourse, defecatory abnormalities or problems with incontinence,

fecal incontinence, anal incontinence."

[9] Additionally, the plaintiff alleged that she suffered from dyspareunia, "disrupted external and internal anal sphincters," "completely disrupted perineal body," "attenuated rectovaginal space," "rectovaginal fistula," "very thin rectovaginal septum," "perineal discomfort," "weakened anal sphincter," "pocket between vagina and rectum in which feces gets trapped," "increased risk of tissue breakdown and loss of elasticity/strength of anal sphincter with menopause," and "psychological, physiological and neurological sequelae."

[10] The defendant did not dispute that the plaintiff did in fact have a fourth degree laceration at some point in time, but did dispute that it occurred during the birth of the plaintiff's second child, on April 17, 2007, or shortly thereafter, on April 18, 2007. The plaintiff claims only that the defendant was negligent in its care of the plaintiff on April 17, 2007 and/or April 18, 2007, and does not make any claim against the defendant in its follow-up care of the plaintiff.

[11] The plaintiff argues that the court essentially directed a verdict in favor of the defendant and, therefore, the standard of review applicable to directed verdicts applies in this case, which is that "[w]e review a court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff." (Internal quotation marks omitted.) *Burton* v. *Stamford*, 115 Conn. App. 47, 67, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009). We do not agree with the plaintiff's characterization of the court's action and, therefore, decline to apply this standard of review.

[12] The plaintiff also argues that the court mistakenly believed that a fourth degree laceration was the same thing as a severe tear of the vaginal tissue, perineal skin and muscle, and anal sphincter. In her brief, the plaintiff argues that the latter injury could be considered a *third* degree laceration as opposed to a *fourth* degree laceration. It appears clear from the undisputed evidence, however, that a "severe tear of the vaginal tissue, perineal skin and muscle, and anal sphincter," as listed in the complaint, is the natural sequelae of a fourth degree laceration. Also, even if we agreed with the plaintiff that the court was mistaken in its analysis that they are the same injury, the argument fails because of the framing of the interrogatory. Specifically, the use of the term "and/or" in the interrogatory allowed the jury to determine the two stated injuries, a "fourth degree laceration" and a "severe tear of the vaginal tissue, perineal skin/muscle, and anal sphincter," separately. In sum, if the jury had believed that a forth degree laceration was a different injury from a severe tear, it could have answered "yes" to the interrogatory if indeed it determined that the plaintiff had sustained such an injury during labor. Moreover, the evidence could not have supported reasonably a jury's conclusion that the plaintiff sustained a lesser laceration, such as a third degree laceration, during labor, as the record contains no evidence in support of such a finding. See *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 656, 904 A.2d 149 (2006) ("[g]enerally, the plaintiff must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons" [internal quotation marks omitted]).

[13] We realize that counsel's statements are not evidence, though it is illustrative and provides useful insight into the plaintiff's theory of the case at trial, as opposed to what she now argues on appeal.

[14] The defendant argues that the court "correctly instructed the jury to consider both parts of the first interrogatory together." It appears, however, that the defendant misunderstands the court's answer to the jury's question. The interrogatory asked the jury to determine whether the plaintiff had sustained a "fourth degree laceration *and/or a severe tear of* [*the*] *vaginal tissue . . . perineal skin and muscle, and anal sphincter . . . .*" (Emphasis added.) The jury asked the court whether "the injury *stated after and/or* [should be] evaluated as a whole or should they be evaluated separately?" (Emphasis added.) The court answered: "The injury *stated after and/or . . .* should be evaluated as a whole . . . ." (Emphasis added.) In sum, the court was not instructing the jury that a *fourth degree laceration* and a severe tear should be read as one injury, but instead that a "severe tear of the vaginal tissue, perineal skin and muscle, and anal sphincter" should be read as one injury. Though the court opined, outside of the presence of the jury, that a fourth degree laceration and severe tear, as listed in the interrogatory, *were* the same injury, it did not instruct the jury to read the interrogatory as such. The jury was free to determine separately, by virtue of the use of

"and/or," whether the plaintiff sustained a fourth degree laceration, or whether she sustained a severe tear of the vaginal tissue, perineal skin and muscle, and anal sphincter. See also footnote 11 of this opinion.

[15] A court's decision, sua sponte, to submit a narrowing interrogatory to the jury carries some risks. It is not our role, on review, however, to substitute our judgment for the court's reasonable exercise of discretion.

---