******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THERESA GIBSON *v.* DENMO'S ORIGINAL DRIVE-IN, LLC (AC 47533)

Suarez, Seeley and Wilson, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant in her premises liability action. She claimed that the court abused its discretion in denying her motion to set aside the verdict because the court provided the jury with an incorrect version of interrogatories and the jury's use of those interrogatories precluded the jury from fully evaluating the essential elements of her cause of action. *Held*:

The trial court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict, as the version of the interrogatories submitted to the jury properly followed the evidence adduced at trial and were consistent with the pleadings, and the first interrogatory as to the plaintiff's burden of proof that the jury answered in the negative properly articulated an essential element of a premises liability claim and was properly dispositive of that claim, such that the erroneous submission of the interrogatories to the jury was harmless.

Argued March 20—officially released May 27, 2025

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Parkinson*, *J.*; verdict for the defendant; thereafter, the court, *Parkinson*, *J.*, denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Affirmed*.

*Andrew J. Pianka*, for the appellant (plaintiff).

*Christopher S. Acquanita*, for the appellee (defendant).

*Opinion*

WILSON, J. In this premises liability action, the plaintiff, Theresa Gibson, appeals from the judgment of the

trial court, rendered after a jury trial, in favor of the defendant, Denmo's Original Drive-In, LLC. On appeal, the plaintiff claims that the trial court abused its discretion by denying her motion to set aside the verdict because the court provided the jury with an incorrect version of the interrogatories and the jury's use of those interrogatories precluded the jury from fully evaluating the essential elements of the cause of action. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history is relevant to our consideration of the present appeal. The plaintiff commenced this action in August, 2022. Her revised complaint (operative complaint) consisted of one count sounding in premises liability. In the operative complaint, the plaintiff alleged that, on March 27, 2022, she was a customer at the defendant business, a drive-in eatery in Southbury. After she placed her order at the walk-up window, she walked to her vehicle to wait for her order and, while doing so, tripped and fell when she "stepped on a loose, uneven surface or defect that was covered with leaves and debris which obstructed the view of the same." The plaintiff alleged that (1) she sustained physical injuries while on a path between the walk-up window and the parking area, (2) the defendant had actual or constructive notice of the defective condition and took no steps to remedy the defect or to warn patrons, and (3) her injuries were caused by the defendant's negligence. In paragraph 8 of her complaint, the plaintiff alleged ten different negligent acts by the defendant that caused her injuries and damages.[1] Although the defendant admitted to having possession and control of the premises, it denied, or denied having sufficient knowledge to respond to, the material allegations of the operative complaint.

[1] Specifically, in paragraph 8 of the operative complaint, the plaintiff alleged:

"8. The injuries and damages suffered by the plaintiff . . . were caused by the defendant in one or more of the following ways:

The case was tried to a jury. Prior to trial, both parties filed proposed jury interrogatories and verdict forms with the court, *Parkinson, J.*, pursuant to Practice Book § 16-18.[2] Evidence commenced and concluded on Feb-

"a. in that the defendant was aware or should have been aware of the defect, and the defendant allowed the hazardous condition to remain for an unreasonable period of time;

"b. in that the walkway in which [the plaintiff] was caused to fall was not reasonably safe for the use and purpose intended;

"c. in that there were no warnings as to the hazardous nature or condition of the walkway;

"d. in that the defendant failed to inspect or performed inadequate inspections of the area for hazardous conditions despite having adequate time to discover the same;

"e. in that the defendant failed to remedy the defect in the walkway, although it was well aware of the dangerous conditions;

"f. in that the defendant failed to notify those responsible for maintaining the area of the defective and dangerous condition of the area that its patrons were utilizing to park and access the [business];

"g. in that the defendant failed to inspect or made an inadequate inspection of said property to locate and remedy any defect which may pose a hazard to the health or safety of those utilizing the parking and access way to their business, and that the defendant had actual or constructive notice of such hazards, and such inadequate inspection constituted a disregard for the health and safety under all relevant circumstances;

"h. in that the defendant allowed leaves and debris to litter the area and to cover and conceal the defects that existed, creating a dangerous and unsafe condition to those, including the plaintiff, who were utilizing the facility;

"i. in that the defendant failed to maintain, patch, or repave the walkway despite the fact that the asphalt had long exceeded its useful life and had become cracked, uneven, loose, and otherwise created a trip[ping] hazard; and

"j. in that the defendant invited the general public to patronize their facility, and knew or with the exercise of due care, should have known that the walkway and parking lot contained loose pavement, defects, cracks, and uneven areas and that these areas could and would be covered with leaves and debris concealing the hazards, yet the defendant failed to take any steps to safeguard their patrons from this risk."

[2] Practice Book § 16-18 provides: "The judicial authority may submit to the jury written interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. The clerk will take the verdict and then the answers to the several interrogatories, and thereafter the clerk will take the judicial authority's acceptance of the verdict returned and the questions as answered, and proceed according to the usual practice. The judicial authority will not accept a verdict until the interrogatories which are essential to the verdict have been answered."

ruary 15, 2024, after which time the court addressed the parties' proposed jury interrogatories. Counsel for each of the parties and the court agreed that the interrogatories submitted by the parties would be "combined" into a single set of interrogatories. At the instruction of the court, the defendant's counsel edited the defendant's proposed interrogatories to include a question requested by the plaintiff's counsel and, on February 16, 2024, emailed a new set of proposed interrogatories to the court and the plaintiff's counsel. In response, the plaintiff's counsel emailed the court and the defendant's counsel his objections to the defendant's edited proposed interrogatories. Specifically, the plaintiff's counsel stated that "question 1 should be deleted as it is repetitive of paragraph 4 (d)," that question 2 should be modified, and that "[t]he interrogatories unduly limit the plaintiff's claim." The plaintiff's counsel then submitted a revised draft to the court and to the defendant's counsel.

On February 20, 2024, the court again reviewed the proposed jury interrogatories with the parties' counsel. After further discussion, the parties' counsel agreed to a revised version of the plaintiff's proposed jury interrogatories (modified interrogatories), which stated in relevant part:

"1. Did the plaintiff prove by a preponderance of the evidence that on March 27, 2022, the defendant's premises were in a defective condition: loose, uneven surface or defect that was covered with leaves and debris which obstructed the view of same.

"YES ______ NO ______

"(If you answer 'YES,' continue to the next question. If you answer 'NO,' do not complete the rest of these

interrogatories. Sign below. Fill in and return a defendant's verdict on the defendant's verdict form.)"

After question 1, there were two additional questions asking the jury to specify whether it had found that the plaintiff proved by a preponderance of the evidence that the defendant had notice of the specific defective condition that caused the plaintiff's physical injuries and whether the defective condition was a substantial factor in causing those injuries. The latter question had ten subparts asking the jury to specify which of the defendant's alleged negligent acts was a substantial factor in causing the plaintiff's injuries and damages. These subparts corresponded to the ten allegations of negligence set forth in paragraph 8 of the operative complaint. See footnote 1 of this opinion.

Before the court submitted the case to the jury, the court confirmed with the parties that the materials to be submitted to the jury were ready, including the full exhibits, the jury interrogatories, and the verdict form. The clerk asked if "everyone is satisfied," to which the plaintiff's counsel and the defendant's counsel each replied "[y]es." Thereafter, the jury was provided with the exhibits, jury interrogatories and verdict form and was asked to begin its deliberations. When the jury returned with a verdict, the clerk read aloud the completed jury interrogatories and verdict form, at which time it became apparent that the jury had not been given the modified interrogatories but, rather, the defendant's proposed interrogatories that were emailed to the court and to the plaintiff's counsel on February 16, 2024 (unmodified interrogatories).

The unmodified interrogatories that were provided to the jury stated in relevant part:

"1. Did the plaintiff . . . prove by a preponderance of the evidence that the defendant . . . failed to use

reasonable care to inspect and maintain the premises and to make the premises reasonably safe?

"YES ______ NO ______

"(If you answer 'NO,' do not complete the rest of these interrogatories. Sign below. Fill in and return a defendant's verdict on the defendant's verdict form. If you answer 'YES,' continue on to the next question.)

"2. Did the plaintiff . . . prove by a preponderance of the evidence that the proximate cause of her fall on March 27, 2022, was a defect or dangerous condition that being a loose, uneven surface or defect that was covered with leaves and debris which obstructed plaintiff's view and made the premises not reasonably safe?

"YES ______ NO ______

"(If you answer 'NO,' do not complete the rest of these interrogatories. Sign below. Fill in and return a defendant's verdict on the defendant's verdict form. If you answer 'YES,' continue to the next question.)"

Following the second question, there were two additional questions, addressing whether the plaintiff had proved by a preponderance of the evidence that the defendant had notice of the specific defective condition and whether the plaintiff had proved that the defendant breached its duty to the plaintiff. The latter question had ten subparts inviting the jury to specify which, if any, of the defendant's alleged negligent acts was a substantial factor in causing the plaintiff's injuries and damages. The alleged negligent acts described in this question corresponded with the ten allegations of negligence set forth in paragraph 8 of the operative complaint. See footnote 1 of this opinion.

The jury responded negatively to the first interrogatory and returned a verdict for the defendant. After the clerk announced the jury's verdict, the court directed

the jury to exit the courtroom, and the following exchange occurred between the court and the parties' counsel:

"[The Plaintiff's Counsel]: I do not believe those were the jury interrogatories we agreed upon.

"[The Defendant's Counsel]: I . . . don't know how they got them either, Your Honor, those were my proposed ones.

"The Court: I did ask for you both to check the materials that were being given to the jurors; I thought you both did.

"[The Defendant's Counsel]: We looked at the exhibits. And, no, we didn't look at the interrogatories. I just had the copy in front of me.

"The Court: What [does] counsel suggest we do now?

* * *

"[The Plaintiff's Counsel]: I think I move for a mistrial.

"The Court: On what ground?

"[The Plaintiff's Counsel]: On the grounds that [the jury was] given inaccurate jury interrogatories after we went through, at length, what they should have been, and they were given the improper interrogatories. They were confusing, and it was not what we agreed upon.

"[The Defendant's Counsel]: Your Honor, I certainly don't think there's a mistrial. If counsel is not accepting of that, they can be given the other ones.

"[The Plaintiff's Counsel]: I think, at this point, they've been poisoned by the . . . other questions.

"The Court: So, what were the questions that were included that were not supposed to be?

"[The Plaintiff's Counsel]: Basically, [we] went over [the] defendant's submission in the beginning. We went through and weeded them out.

"The Court: I remember asking for the exhibits, as well as the interrogatories, and the verdict forms to be checked by the parties before they were given to the jurors. I asked more than once. So, I'm not really sure what has happened here. It could be that it was one of the court exhibits that were given in.

"The Clerk: This is . . . what was given to me as a court exhibit.

"The Court: So, the grounds for a mistrial are what, that the questions were confusing.

"[The Plaintiff's Counsel]: They were improper, they were confusing, they were not what we agreed upon.

"The Court: Does that change the verdict form though? The verdict form was the same either way.

"[The Plaintiff's Counsel]: I think that how you get to the verdict is based on the jury interrogatories, and there were questions in there that really were confusing and should not have been submitted. We weeded them out, and they went to the jury anyway.

"The Court: So, your suggestion . . . is for them to be given the correct interrogatory.

"[The Defendant's Counsel]: Your Honor, I certainly don't think a mistrial is appropriate. They were—

"The Court: I'm asking you if I—

"[The Defendant's Counsel]: I—I would—

"The Court: —do not declare a mistrial, is your suggestion still—

"[The Defendant's Counsel]: To give them . . . the sheet we agreed on. There's . . . no harm.

"[The Plaintiff's Counsel]: I think there is harm. They've already reviewed and made up their mind based on the improper interrogatories, the improper instructions. They're not [going to] change their mind at this point.

"The Court: Right, but you want them to have the proper questions.

"[The Plaintiff's Counsel]: They sat down, and they deliberated based on the improper questions. They've made up their mind. I don't see how we can correct it by simply now giving them the correct questions.

"The Court: Okay. All right. So, I'm going to accept the verdict. I'm denying the motion for a mistrial, given that they have the option to have the other interrogatory for the questions to be given to them as you said they should be, and you don't want that option.

"[The Plaintiff's Counsel]: I believe it's probably worthless at this point.

"The Court: Okay. So, your motion for a mistrial is denied. . . . [L]et's take a brief recess."

After a brief recess, the court resumed its discussion of the interrogatories with the parties.

"The Court: All right . . . . I want to compare, if you will, the verdict form [the jurors were] given with the verdict form that they should have been given and ask you to articulate how you believe you've been harmed, how the plaintiff has been harmed. All right. So, we have the verdict form they were given and then the one that they should have been given . . . .

"[The Plaintiff's Counsel]: The jury interrogator[ies] that were provided, number 1 . . . 'Did the plaintiff

. . . prove by a preponderance of the evidence that the defendant . . . failed to use reasonable care to inspect and maintain the premises to make the premises . . . reasonably safe?' If we look at the continuation of this interrogatory, we skip down to interrogatory 4 (d).[3]

"The Court: But why do we get to [interrogatory] 4 (d) . . . if [the jury doesn't] have to do anything else?

"[The Plaintiff's Counsel]: . . . [T]his is confusing.

"The Court: . . . [W]hat's confusing? . . . I'm acknowledging that [the jury was] given the incorrect [interrogatories]; I'm acknowledging that. What I want to know is . . . how would things have been different, right? So, the one that I'm looking at from the one that we agreed to, or the one that court ordered that they should have, still [says], if you say, yes, you go to the next question. If you say no, you return a defendant's verdict.

"[The Plaintiff's Counsel]: And the one that they're answering . . . if we look at under [interrogatory] 4 . . . there's [a] series of questions that they could have answered 'yes' or 'no' to. Okay. But by putting it up in number 1, if you answer 'no' to that . . . we're done for the day.

"The Court: Either way, they were though. You agreed to that language.

"[The Plaintiff's Counsel]: No. What we agreed to, the first one should have been, did the defendant prove by a preponderance of the evidence that on March 27,

[3] Interrogatory 4 (d) provided in relevant part:

"Did the plaintiff . . . prove by a preponderance of the evidence, that the defendant breached its duty to the plaintiff in one or more of the following ways . . .

"(d) in that the defendant failed to inspect or performed inadequate inspections of the area for hazardous conditions despite having adequate time to discover the same;

"YES ______ NO ______"

2022, the defendant['s] premises was in the defective condition, loose uneven surface—

"The Court: Yes.

"[The Plaintiff's Counsel]: —and that . . . it was covered by leaves and debris. . . . [W]as the premises defective? That's the initial question.

"The Court: Right. And then below—

"[The Plaintiff's Counsel]: And . . . that's not what number 1 in the one that we gave . . .

"The Court: No, I . . . understand that. But underneath, the language on both of the number 1s, it [says], if 'yes,' continue. If 'no,' it's a defendant's verdict.

"[The Plaintiff's Counsel]: Correct. But that's like saying go to number 4, and I could not win this case unless they answered [interrogatory] 4 (d) 'yes,' but the options there were . . . (a) through (j). And you've limited me to one aspect of the case. When under . . . [interrogatory] 4, there's actually (a) through (j).

"The Court: . . . I just want to make sure I'm following. The jury interrogatories that you sent to me also did that. Because question 1, as you presented it to me [said], number 1: did the plaintiff prove by a preponderance of the evidence that on March 27, 2022, the defendant's premises were in a defective condition? I added, 'a loose uneven surface or defect that was covered with leaves and debris which obstructed the view of same,' options are 'yes' and 'no.' Underneath, the language you provided to the court, 'if the answer is yes, continue. If the answer is no, do not complete the rest of these interrogatories and return a defendant's verdict.' [The jurors] would never have got[ten] to that if they answered no on that question as well.

"[The Plaintiff's Counsel]: But that wasn't the first one they were presented with.

"The Court: Understood, understood.

"[The Plaintiff's Counsel]: And I think after they answer 'no' to the first one, and they didn't have to go any further, you lose interest. That's why we got to— a verdict in ten minutes.

"The Court: Okay. All right. Is there anything else you want to state for the record—

"[The Plaintiff's Counsel]: No, Your Honor.

"The Court: —as to what the harm is?

"[The Plaintiff's Counsel]: What harm?

"The Court: Yes.
"[The Plaintiff's Counsel]: I . . . believe we went through—

"The Court: Okay.

"[The Plaintiff's Counsel]: —the jury interrogatories. We agreed on what was fair and accurate and that was not presented to the jury.

"The Court: Okay. The court will state for the record that all of the documents that were presented to the jury were presented to counsel to review before they went into the jury room. Okay. Is there anything else?

Is there anything else?

"[The Defendant's Counsel]: No, Your Honor.

"The Court: Anything else?

"[The Plaintiff's Counsel]: No, Your Honor.

"The Court: You can bring the jury out, please." (Footnoted added.)

Thereafter, the court accepted the verdict for the defendant and discharged the jury. On February 22, 2024, the plaintiff filed a motion to set aside the jury's verdict "on the grounds that the jury interrogatories

presented to the jury were not the interrogatories that were approved by the parties and the court, and that the interrogatories that were in fact submitted were confusing and prejudicial to the plaintiff." Specifically, the plaintiff argued that, in order for her to succeed on her claim, she "needed to prove only one of her allegations contained in paragraph 8 [of her complaint]," but the interrogatories provided to the jury instructed the jury to stop and return a verdict for the defendant if it answered "no" to the first interrogatory, which prevented the jury from reviewing the nine other allegations of negligence that were set forth in paragraph 8 of the operative complaint.

On March 4, 2024, the defendant filed an objection to the plaintiff's motion to set aside the jury verdict in which it argued, inter alia, that, "[u]nder premises liability law, the plaintiff was first required to prove that her fall was caused by a defective or dangerous condition and that the defendant had actual or constructive notice of the defective condition *prior to* answering any interrogatory question as to whether the defendant was negligent." (Emphasis in original.) It contended that "there was obviously no dangerous or defective condition and certainly no actual or constructive notice of a dangerous or defective condition given that the jury opined that the premises was reasonably safe" when the jury answered "no" in response to the first interrogatory. Moreover, the defendant argued that, "[e]ven if the jury had answered the [modified] interrogatories [that the court proposed submitting to the jury], which the plaintiff's attorney refused to allow, the jury would have responded that the plaintiff failed to prove that the defendant's premises was in a defective condition; that being a loose, uneven surface or defect that was covered by leaves and debris which obstructed the plaintiff's view of same." In the plaintiff's reply in support of her motion to set aside the jury verdict, filed

on March 5, 2024, she further argued that "[t]he entire verdict is based on a finding that the defendant properly inspected the property. The jury was prevented from addressing whether the defendant's property contained a defect or whether the defect caused the plaintiff harm."

On March 7, 2024, the court heard argument on the plaintiff's motion to set aside the verdict. On March 19, 2024, the court denied the plaintiff's motion. In its memorandum of decision, the court concluded that, although it was undisputed that the incorrect set of interrogatories was submitted to the jury, the error did not cause any harm to the plaintiff. The court reasoned that "[t]he questions the plaintiff requested on the interrogatories were also of the same format in that, if the jurors answered 'no' to the first question, they would have returned a verdict for the defendant. In fact, the first question on the 'correct' interrogatories also referred to whether the plaintiff proved that the defendant's premises was defective. If the jurors answered 'no,' the same result would have been reached: a defense verdict." Moreover, the court noted that "the evidence presented in the case was more than adequate for the jury to have reached the conclusion it reached."[4] This appeal followed.

[4] The trial court further concluded that "any objection to the interrogatories has now been waived," because, before it accepted the verdict, it offered the parties' counsel the opportunity to have the jury complete the modified interrogatories and also, before the case went to the jury, it had instructed the parties to check all the materials that were being submitted to the jury. We view this conclusion as a second, independent ground in support of the court's decision to deny the plaintiff's motion to set aside the verdict. On appeal, although the plaintiff does not challenge this independent ground as a separate claim in her appellate briefs, the plaintiff's analysis of the claim that she did raise before this court nonetheless sufficiently challenges the court's conclusion that she waived any objection to the alleged improper submission of the interrogatories. Because we conclude herein that the unmodified interrogatories were consistent with the pleadings and the evidence adduced at trial and that the court's conclusion that their submission was harmless was correct, we need not consider this ground as a basis for affirmance. See, e.g., *State* v. *Jordan*, 314 Conn. 354, 369 n.7, 102 A.3d

On appeal, the plaintiff claims that the court abused its discretion by denying her motion to set aside the verdict because the interrogatories submitted to the jury did not follow the pleadings and precluded the jury from fully evaluating the allegations in the operative complaint and the evidence presented at trial. Counsel for the plaintiff conceded during oral argument before this court that each element of a premises liability claim was incorporated into the unmodified interrogatories that had been submitted to the jury but contended that the jury did not review and answer all of the interrogatories that corresponded with each element of the cause of action. The plaintiff argues that the verdict was based on a single interrogatory that did not address whether there was a specific defect that caused her injuries and, because the jury was directed to disregard the other interrogatories and enter a verdict for the defendant if the jury answered "no" to that first interrogatory, that directive "cause[d] the jury to ignore the core elements of the premises liability claim as alleged and the allegations of how the defendant's negligence caused the plaintiff's injuries." In response, the defendant argues that the court acted within its discretion in denying the plaintiff's motion to set aside the verdict. We agree with the defendant.[5]

1 (2014) (declining to reach alternative ground for affirmance in light of conclusion that alleged prosecutorial improprieties were harmless).

[5] The plaintiff additionally claims that the first interrogatory in the unmodified interrogatories was improper because it constituted a compound question. As such, the plaintiff contends that this interrogatory did not require the jury to make a distinct finding of fact and, thus, could not assist in testing the correctness of the verdict entered. The defendant argues this claim is unpreserved as the plaintiff did not raise it before the trial court. We agree with the defendant that, although this claim is related to the propriety of the interrogatories provided to the jury, it raises an entirely new legal issue and cannot be considered as part of the claim raised before the trial court, namely, that the interrogatories precluded the jury from considering all of the essential elements of the cause of action. "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*,

Before turning to the merits of the plaintiff's claim, we briefly set forth our standard of review and applicable principles of law. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 414, 78 A.3d 76 (2013).

"The power of the trial court to submit proper interrogatories to the jury, to be answered when returning

313 Conn. 610, 619–20, 99 A.3d 1079 (2014). Accordingly, we decline to review this claim.

The plaintiff also argues that the first interrogatory in the unmodified interrogatories was improper because it called for a finding of fact not relevant in this matter in that it asked whether the premises was reasonably safe, as opposed to whether there was a specific defect, and because it was not clear whether the jury's answer addressed the condition of the property in general or the specific area at issue. The defendant contends that these arguments also amount to unpreserved claims of error that we should not consider. We disagree with the defendant. "[O]rdinarily, [a reviewing court] will decline to address only a *claim* that is raised for the first time on appeal. . . . [A] claim is an entirely new legal issue, whereas, [g]enerally speaking, an argument is a point or line of reasoning made in support of or in opposition to a particular claim. . . . Because [o]ur rules of preservation apply to claims . . . [and not] to legal arguments . . . [w]e may . . . review legal arguments that differ from those raised below if they are subsumed within or intertwined with arguments related to the legal claim before the court." (Emphasis in original; internal quotation marks omitted.) *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 744–45, 299 A.3d 1133, cert. denied, 348 Conn. 914, 303 A.3d 260 (2023). We conclude that these arguments are intertwined with the plaintiff's claim that the interrogatories submitted to the jury did not follow the pleadings and precluded the jury from evaluating all of the

[its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . .

"We further note that jury interrogatories must be consistent with the pleadings and the evidence adduced at trial, so as not to mislead the jury. . . . The function of jury interrogatories is to provide a guide for the jury's reasoning, and a written chronicle of that reasoning. . . . The purpose of jury interrogatories is to elicit a determination of material facts, to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 176 Conn. App. 420, 430–31, 171 A.3d 88 (2017).

"[A] premises liability claim is a negligence cause of action. . . . The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . A business owner owes its invitees a duty to keep its premises in a reasonably safe condition." (Citation omitted; internal quotation marks omitted.) *Walencewicz* v. *Jealous Monk, LLC*, 228 Conn. App. 349, 363, 325 A.3d 271, cert. denied, 350 Conn. 927, 326 A.3d 249 (2024). "To hold the defendant liable for her personal injuries, the plaintiff must prove (1) the existence of a defect, (2) that

allegations in the operative complaint and the evidence presented at trial. Accordingly, we address both arguments within our analysis in this opinion.

the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it." (Internal quotation marks omitted.) *Martin* v. *Stop & Shop Supermarket Cos.*, 70 Conn. App. 250, 251, 796 A.2d 1277 (2002).

In the present case, although it is undisputed that the unmodified interrogatories submitted to the jury were not those agreed upon by counsel, we conclude that their erroneous submission was nonetheless harmless because the unmodified interrogatories were proper. See, e.g., *Earlington* v. *Anastasi*, 293 Conn. 194, 201–202, 976 A.2d 689 (2009) (concluding that, although court erred in submitting set of interrogatories to jury, which included interrogatories that parties had previously agreed to omit and another they agreed to modify, submission did not affect outcome and was harmless). After reviewing the unmodified interrogatories, it is clear that they were consistent with the pleadings and the evidence adduced at trial. The unmodified interrogatories submitted to the jury properly directed the jury's attention to each element of the plaintiff's premises liability claim and each of the ten specific allegations of negligence set forth in the operative complaint, and required the jury to make such findings, as necessary. Rather, the plaintiff's claim rests entirely upon the alleged impropriety of the first interrogatory.

The first question in the unmodified interrogatories asked whether the defendant "failed to use reasonable care to inspect and maintain the premises and to make the premises reasonably safe." The plaintiff asserts that this interrogatory called for an irrelevant factual finding because, "[i]n a premises liability case, the issue is not whether the property in general was well maintained and kept reasonably safe, but rather whether there was

a specific defect that caused the plaintiff to be injured." We disagree. The law is clear that a business owner has a duty to invitees to keep its premises in a reasonably safe condition. See *Walencewicz* v. *Jealous Monk, LLC*, supra, 228 Conn. App. 363. Thus, the first interrogatory properly articulated an essential element of a premises liability claim: breach of duty. See id. ("[t]he essential elements of a cause of action in negligence are well established: duty; *breach of that duty*; causation; and actual injury" (emphasis added; internal quotation marks omitted)). It was also consistent with the pleadings as paragraph 8 of the operative complaint sets forth several allegations concerning the condition of the premises and the failure of the defendant to maintain that premises. As this was an essential element of a premises liability action, it was properly dispositive of the plaintiff's claim. See, e.g., *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 256, 9 A.3d 364 (2010) (determining that "the issue of breach was essential to the case, as it was wholly dispositive of the outcome," when jury answered first interrogatory addressing breach of duty in negative, disregarded other interrogatories, and immediately entered verdict for defendant); see also Practice Book § 16-18 ("[t]he judicial authority will not accept a verdict until the interrogatories which are *essential* to the verdict have been answered" (emphasis added)).

The plaintiff argues that this first interrogatory, unlike the first interrogatory in the modified interrogatories, failed to address whether there was a specific defect and precluded the jury from reaching the other elements of her claim. We first note, again, that the unmodified interrogatories were consistent with the pleadings and the evidence adduced at trial. In fact, the second question in the unmodified interrogatories submitted to the jury asked whether there was a specific defect on the premises in a very similar fashion to the

first interrogatory in the modified interrogatories. These subsequent interrogatories were not reached by the jury, as its answer to the first was dispositive of the plaintiff's claim. Moreover, the plaintiff overlooks that a finding by the jury that the premises was reasonably safe necessarily precludes a finding that the premises was in a defective condition. See *Palmieri* v. *Stop & Shop Cos.*, 103 Conn. App. 121, 123–24, 927 A.2d 371 (2007). Thus, an interrogatory that asks whether the premises was not reasonably safe and an interrogatory that asks whether the premises was in a defective condition each address the same issue of breach of duty; the former stated in the negative, the latter stated in the affirmative.

To the extent that the plaintiff argues that the first interrogatory was improper because of the directive following it, we observe that both sets of interrogatories contained a directive following each interrogatory, instructing the jury that if it answered "no," to not complete the rest of the interrogatories and enter a verdict for the defendant. A similar directive was also included in each rendition of the proposed interrogatories before the court, including those submitted by the plaintiff. The plaintiff, who agreed to the modified interrogatories, thus cannot be heard to complain that she was harmed by the directive in the unmodified interrogatories that were submitted to the jury. "It is well established that a party who induces an error cannot be heard to later complain about that error." *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004); see, e.g., id., 105–107 (declining to review defendant's claim challenging jury instruction that he requested from trial court).[6] We also note that, even if the jury had been

[6] "An induced error, or invited error, is [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." (Internal quotation marks omitted.) *State* v. *Cruz*, supra, 269 Conn. 105 n.8.

asked to complete the modified interrogatories, those interrogatories similarly would not have required the jury to reach the subsequent questions addressing the other elements of a premises liability action and the allegations set forth in the complaint, had the jury answered no to the first interrogatory. In sum, given our conclusion that the unmodified interrogatories properly followed the evidence adduced at trial and were consistent with the pleadings, we agree with the court's conclusion that the erroneous submission of the unmodified interrogatories to the jury was harmless. Accordingly, the plaintiff's claim that the trial court abused its discretion in denying her motion to set aside the jury's verdict must fail.

The judgment is affirmed.

In this opinion the other judges concurred.